NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0117n.06
Filed: February 15, 2005

No. 03-3205

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **ARMAND PIRGU**, | ) | ON PETITION FOR REVIEW |
| | ) | FROM A FINAL ORDER OF |
| *Petitioner,* | ) | T H E   B O A R D   O F |
| | ) | IMMIGRATION APPEALS |
| v. | ) | |
| | ) | |
| **JOHN ASHCROFT**, Attorney General; **CAROL** | ) | |
| **JENIFER**, District Director; **IMMIGRATION AND** | ) | |
| **NATURALIZATION SERVICE**. | ) | |

    *Respondents.*

BEFORE:    BATCHELDER and COLE, Circuit Judges, and RUSSELL, District Judge[*]

    **R. GUY COLE, JR., Circuit Judge.**  This is an immigration appeal.  Petitioner Armand

Pirgu contests the Board of Immigration Appeals summary decision affirming Immigration Judge

David Ayala's decision denying an application for asylum.  For the following reasons, we **VACATE**

the Immigration Judge's decision and **REMAND** this petition for proceedings consistent with this

opinion.

## I.

    Petitioner Armand Pirgu is a 25-year-old Albanian citizen who entered the United States via

Detroit, Michigan on March 15, 2001 seeking asylum.  While in Albania, Pirgu was active in the

---

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of
Kentucky, sitting by designation.

Democratic Party, which opposes the majority Socialist Party.  In 1998, Pirgu entered the Albanian military.  Though initially assigned to the infantry, Pirgu testified he was put in isolation for several days, and then demoted to kitchen duty for campaigning for the Democratic Party.  After he was discharged from the military, Pirgu became more active in political organizing, attending numerous meetings and demonstrations.

Pirgu identified three incidents that are the basis of this appeal.  The first was a demonstration that occurred on May 12, 1999 to protest the assassination of Azem Hajdari in 1998, the then-leader of the Democratic Party.  Pirgu attended this demonstration, which was peaceful. Approximately one month later, Pirgu testified that he was approached by two members of the Albanian National Intelligence Service ("SHIK") who warned him to cease his opposition political activity.  On September 12, 1999, Pirgu attended another peaceful Democratic Party political rally held on the anniversary of the assassination of Azem Hajdari.  Pirgu testified that after the September 12 rally, the same two SHIK officers detained him, tied his hands, blew smoke in his face, and again warned him to cease his opposition political activity.

After the Albanian elections in 2000, the Democratic Party organized various rallies to protest voting irregularities and fraud.  Pirgu participated in a large demonstration, attended by more than 10,000 people, on October 16, 2000 in Tirana, Albania.  Pirgu testified that after the rally, the same two SHIK officers detained and beat him.  Pirgu further testified that he was incarcerated at a police station for 48 hours without adequate food, water, or bedding, and was severely beaten several more times, resulting in the loss of four teeth.  Pirgu then fled Albania, and sought asylum

in the United States. Pirgu testified that he feared a return to Albania because, according to his parents, the same two SHIK officers continue to search for him.

The Immigration Judge ("IJ") denied asylum, and the Board of Immigration Appeals ("BIA") summarily affirmed. This appeal ensued.

## II.

Pirgu first claims that the BIA's summary affirmance procedure violates due process. However, we have held that the BIA's summary affirmance procedures are not unconstitutional absent some additional evidence of misconduct. *Denko v. I.N.S.*, 351 F.3d 717, 729 (6th Cir. 2003). Here, there is no additional evidence of misconduct. Accordingly, this claim is without merit.

Pirgu also claims that the IJ's decision lacked substantial evidence. Because the BIA affirmed the IJ without opinion, we review the decision of the IJ directly. *See id.* at 732. We will uphold the IJ's decision if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). In order to reverse the IJ's determinations, "the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed, compels it." *Id.*

In this case, the IJ correctly determined that Pirgu's military demotion was not sufficient harm for a finding of persecution. Since Pirgu testified that he was not significantly intimidated or abused in connection with the demotion, the IJ's decision is supported by substantial evidence. *See Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390 (noting that persecution is an "extreme concept " that entails more than harassment, verbal intimidation, or discrimination, and usually requires "physical punishment, infliction of harm, or significant deprivation of liberty").

As for Pirgu's alleged encounters with the two SHIK officers, however, the IJ did not make credibility findings with regard to Pirgu's testimony. A determination of credibility as to Pirgu's testimony and any other relevant evidence will enable this Court to conduct a meaningful review as to whether a nexus existed between Pirgu's political activities and any abuse that he suffered. We are unable, on this record, to make that determination.

### III.  CONCLUSION

For the preceding reasons, we **VACATE** the decisions of the IJ and the BIA, and **REMAND** this petition for proceedings consistent with this opinion.